EXHIBIT A

Fulton County Superior Court
\*\*\*EFILED\*\*\*LW
Date: 10/5/2023 9:37 PM
Che Alexander, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
# STATE OF GEORGIA

| | |
|---|---|
| JONATHAN PIERSOL,<br><br>    Plaintiff,<br><br>v.<br><br>GEORGIA BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA,<br><br>    Defendant. | Civil Action File No. 2023CV386762<br><br>**JURY TRIAL REQUESTED** |

## **COMPLAINT**

Plaintiff Jonathan Piersol ("Plaintiff" or "Mr. Piersol") files this Complaint against his former employer Defendant Georgia Board of Regents of the University System of Georgia ("Defendant" or "BOR"). Mr. Piersol alleges that BOR violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 *et seq*. (the "Rehabilitation Act") by (1) discriminating against him because of his disability, (2) failing to provide him with a reasonable accommodation for his disability, and (3) retaliating against him by terminating his employment after he requested a reasonable accommodation (Counts I, II, and III). Mr. Piersol additionally alleges that BOR violated Title II of the Americans with Disabilities Act (the "ADA") by (1) discriminating against him because of his disability, (2) failing to provide him with a reasonable accommodation for his disability, and (3) retaliating against him by terminating his employment after he requested a reasonable accommodation (Counts IV, V, and VI). Mr. Piersol alleges as follows:

### **INTRODUCTION AND NATURE OF THE ACTION**

1. Mr. Piersol is an individual with a disability, end-stage renal disease, which requires that he attend dialysis treatments multiple times per week.

2. Mr. Piersol is a former employee of BOR, where he was employed as Vice Chancellor, Chief Information Officer, until the company terminated his employment.

3. Mr. Piersol was an exemplary employee throughout his employment with BOR, and, on or about August 11, 2022, following his first year of employment, he received a satisfactory performance evaluation from his then-supervisor, Tracey Cook, Executive Vice Chancellor, Strategy and Fiscal Affairs. During this time period, Mr. Piersol primarily worked out of BOR's Atlanta office, which allowed him to attend his tri-weekly dialysis appointments at a facility located in Tucker, Georgia, without issue.

4. On or about October 1, 2022, due to a restructuring, Mr. Piersol began reporting to Teresa MacCartney, Chief Operating Officer. Shortly thereafter, Ms. MacCartney required that Mr. Piersol report to the Athens, Georgia office four (4) times per week, and that he work the hours of 8 am – 5 pm every day. Because of the distance between Athens and Tucker, these requirements made it difficult for Mr. Piersol to attend his tri-weekly dialysis appointments from 5 pm – 9 pm, and therefore, on or about October 31, 2022, he requested a reasonable accommodation, requesting to work a modified schedule of 7 am – 4 pm. In the alternative, Mr. Piersol requested intermittent FMLA leave, including to attend upcoming medical appointments on or about November 16 – 18, 2022, December 2, 2022, and additional days as needed to assess his need for a kidney transplant.

5. On or about November 13, 2022, BOR granted Mr. Piersol's intermittent FMLA leave request, which was a reasonable accommodation for this disability.

6. On or about November 14, 2022, one day after BOR granted Mr. Piersol's intermittent FMLA leave request, Ms. MacCartney presented him with two options: (1) BOR would be terminating his employment effective immediately or (2) he could resign in lieu of termination, remaining employed with BOR until December 31, 2022, working on technology-

related projects in BOR's Strategic Implementation Unit. On or about November 15, 2022, needing income and health insurance, Mr. Piersol chose resignation in lieu of termination.

7. BOR violated the Rehabilitation Act by: (a) discriminating against Mr. Piersol because of his disability, (b) failing to provide him with a reasonable accommodation for his disability, and (c) retaliating against him by terminating his employment after he engaged in protected activity by requesting a reasonable accommodation. Mr. Piersol seeks all available relief under the Rehabilitation Act, including declaratory relief, lost wages and benefits, reinstatement or front pay, prejudgment interest, and attorneys' fees and costs.

8. BOR violated the ADA by: (a) discriminating against Mr. Piersol because of his disability, (b) failing to provide him with a reasonable accommodation for his disability, and (c) retaliating against him by terminating his employment after he engaged in protected activity by requesting a reasonable accommodation. Mr. Piersol seeks all available relief under the ADA, including declaratory relief, lost wages and benefits, reinstatement or front pay, prejudgment interest, and attorneys' fees and costs.

## PARTIES, JURISDICTION, AND VENUE

9. Mr. Piersol is a citizen of the United States of America and a resident of Georgia.

10. At all relevant times, Mr. Piersol was a qualified individual with a disability as that term is defined under 42 U.S.C. § 12102, which is incorporated by 29 U.S.C. § 705(20).

11. BOR employed Mr. Piersol as Vice Chancellor, Chief Information Officer from on or about July 19, 2021, until November 14, 2022, and in the Strategic Implementation Unit working on technology-related projects until December 31, 2022.

12. BOR is an agency created by the State of Georgia vested with the governance, control, and management of state funded post-secondary educational institutions.

13. This Court has personal jurisdiction over BOR, and venue is proper, because BOR is headquartered at 270 Washington Street SW, Atlanta, Georgia 30334.

14. On information and belief, BOR is a recipient of federal funds, and is therefore covered by and subject to the Rehabilitation Act, which, *inter alia*, prohibits discrimination against persons with disabilities as defined by 42 U.S.C. § 12102, and requires covered entities such as BOR to reasonably accommodate employees with disabilities.

15. BOR is a public entity and is therefore covered by and subject to Title II of the ADA, which, *inter alia*, prohibits public entities from discriminating against individuals with disabilities.

**STATEMENT OF FACTS**

16. BOR, a government agency, oversees the University System of Georgia and is comprised of "26 higher education institutions."

17. On or about July 19, 2021, BOR hired Mr. Piersol as Vice Chancellor, Chief Information Officer ("CIO").

18. As the CIO, Mr. Piersol's job duties included, *inter alia*, overseeing Information Technology Services ("ITS") and managing over 180 staff members over multiple locations.

19. Mr. Piersol is an individual with a disability: end-stage renal disease. Mr. Piersol's disability required that, during the relevant time period, he attend dialysis treatments three (3) times per week, approximately four (4) hours per treatment.

20. Mr. Piersol was fully capable of performing the essential functions of his position.

21. From the start of Mr. Piersol's employment with BOR and continuing until on or about September 30, 2022, Mr. Piersol's direct manager was Tracey Cook, Executive Vice Chancellor, Strategy and Fiscal Affairs.

22. During this time period, Mr. Piersol worked from BOR's office located in Atlanta, Georgia and attended dialysis appointments 3 times per week after work at a facility located in Tucker, Georgia, without issue.

23. On or about August 11, 2022, during Mr. Piersol's 2021-2022 annual performance evaluation, and based on his satisfactory job performance over the course of his first year of employment with BOR, Ms. Cook rated Mr. Piersol as "strongly meets expectations." In that evaluation, Ms. Cook commended Mr. Piersol's performance by stating that he had done an "overall[] good job" and highlighted several key accomplishments, including that Mr. Piersol (1) reorganized his leadership team and hired a new Chief Technology Officer, (2) recognized internal BOR talent by promoting from within, and (3) discussed new opportunities and well-thought-out proposals surrounding various technological services which were aimed towards ITS's goal to "be an organization that is agile, innovative, flexible, service minded and creative in problem-solving."

24. On or about October 1, 2022, due to an organizational restructuring, Mr. Piersol began reporting to Teresa MacCartney, Chief Operating Officer.

25. In a meeting on or about October 28, 2022, Ms. MacCartney informed Mr. Piersol that, beginning immediately, he was required to report to the Athens office 4 times per week, notwithstanding the fact that when Mr. Piersol accepted the CIO position, it was his understanding that he would primarily work from the Atlanta office.

26. Based on his understanding of the job requirements upon hire, Mr. Piersol had found living arrangements and chose a dialysis treatment center in the metro-Atlanta area. Nonetheless, Mr. Piersol complied with Ms. MacCartney's directive, and began reporting to the Athens office.

27. Ms. MacCartney also informed Mr. Piersol in that October 28, 2022 meeting that he was required to work from 8:00 am – 5:00 pm each day. This requirement conflicted with Mr. Piersol's dialysis appointments, which were from 5:00 pm to 9:00 pm each Monday, Wednesday, and Friday.

28. On or about October 31, 2022, Mr. Piersol sent an email to Ms. MacCartney requesting an accommodation to work a modified schedule from 7:00 am – 4:00 pm so that he could travel from Athens to Tucker to attend tri-weekly dialysis appointments for his serious health condition. Quint Hill, Assistant Vice Chancellor of HR & University System Office ("USO") HR Director and Juanita Hicks, Vice Chancellor, HR, were copied on that email.

29. In the alternative, Mr. Piersol requested intermittent FMLA leave to allow him to leave work early to attend his dialysis appointments. He further requested intermittent FMLA leave, including for medical appointments on November 16 – 18, 2022, December 2, 2022, and additional days as needed, to be determined at a later date as he underwent various procedures and evaluations for a kidney transplant, which would have eliminated the need for life-long dialysis.

30. On or about November 2, 2022, BOR tentatively approved Mr. Piersol's modified work schedule through November 11, 2022.

31. On or about November 3, 2022, Mr. Piersol met with Ms. Hill to discuss his accommodation and FMLA requests. In that meeting, Ms. Hill assured Mr. Piersol that his requests would be approved and that he only needed to submit the remaining additional paperwork.

32. Following that meeting, on or about November 10, 2022, Mr. Piersol's physician submitted medical paperwork to BOR outlining Mr. Piersol's disability and his need to attend tri-weekly dialysis appointments.

33. On or about November 13, 2022, Mr. Piersol received an email from Ms. Hill approving his request for a modified work schedule, and stating that, although he still needed to submit some additional supporting documentation, his November 16 – 18, 2022 FMLA dates were approved, which were a reasonable accommodation for his disability.

34. One day later, on or about November 14, 2022, Mr. Piersol received an unexpected meeting invitation on his calendar from Ms. MacCartney and Ms. Cynthia Okonwo, Assistant Director of HR for the USO. In that meeting, Ms. MacCartney informed Mr. Piersol that his employment was terminated effective immediately.

35. Ms. MacCartney then gave Mr. Piersol the option to resign in lieu of termination, in which he would remain on staff until December 31, 2022, working remotely on technology-related projects in the Strategic Implementation Unit ("SIU") under the leadership of Rich Loftus, Associate Vice Chancellor for Strategic Implementation. Mr. Loftus was junior to Mr. Piersol in his role as Vice Chancellor, CIO.

36. On or about November 15, 2022, needing income and health insurance, Mr. Piersol chose resignation in lieu of termination and immediately began working remotely in the SIU.

37. Mr. Piersol's final day of employment with BOR was December 31, 2022.

38. BOR terminated Mr. Piersol's employment because of his disability and/or because Mr. Piersol engaged in protected activity by requesting a reasonable accommodation.

39. BOR acted with malice and/or reckless indifference to Mr. Piersol's federally protected rights.

40. Due to BOR's violations of federal law, Mr. Piersol has incurred lost wages and benefits.

## COUNT I
## Discriminatory Termination in Violation of the Rehabilitation Act

41. At all relevant times, Mr. Piersol was a qualified individual with a disability as that term is defined under 42 U.S.C. § 12102, incorporated by the Rehabilitation Act.

42. Mr. Piersol is a person with a disability inasmuch as he has a physical impairment causing a substantial limitation in one or more major life activities.

43. At all relevant times, Mr. Piersol was qualified to perform the essential functions of the Chief Information Officer position.

44. On information and belief, BOR is an entity that receives federal funding.

45. BOR violated the Rehabilitation Act by discriminating against Mr. Piersol on the basis of his disability, including terminating Mr. Piersol's employment because of his disability and/or because he requested a reasonable accommodation related to his disability.

46. BOR acted with deliberate indifference to Mr. Piersol's federally protected rights under the Rehabilitation Act.

47. As a consequence of BOR's violations of the Rehabilitation Act, Mr. Piersol has incurred lost wages and benefits.

48. Mr. Piersol is entitled to declaratory relief, lost wages and benefits, front pay or reinstatement, and expenses of litigation, including reasonable attorneys' fees and costs.

## COUNT II
## Failure to Accommodate Disability in Violation of the Rehabilitation Act

49. At all relevant times, Mr. Piersol was a qualified individual with a disability as that term is defined under 42 U.S.C. § 12102, incorporated by the Rehabilitation Act.

50. Mr. Piersol is a person with a disability inasmuch as he has a physical impairment causing a substantial limitation in one or more major life activities.

51. At all relevant times, Mr. Piersol was qualified to perform the essential functions of the Chief Information Officer position.

52. On information and belief, BOR is an entity that receives federal funding.

53. On or about October 21, 2022, Mr. Piersol requested to work a modified schedule of 7 am – 4 pm in order to attend tri-weekly dialysis appointments for his disability. In the alternative, he requested intermittent FMLA leave, including to attend upcoming medical appointments on or about November 16 – 18, 2022, December 2, 2022, and additional days as needed to assess his need for a kidney transplant.

54. On or about November 14, 2022, one day after BOR granted Mr. Piersol's intermittent FMLA request, Ms. MacCartney presented him with two options: (1) BOR would be terminating his employment effective immediately or (2) he could resign in lieu of termination, remaining employed with BOR until December 31, 2022, working on technology-related projects in BOR's Strategic Implementation Unit.

55. On or about November 15, 2022, needing income and health insurance, Mr. Piersol chose resignation in lieu of termination.

56. BOR violated the Rehabilitation Act by terminating Mr. Piersol's employment and failing to provide him with a reasonable accommodation for his disability.

57. BOR acted with deliberate indifference to Mr. Piersol's federally protected rights under the Rehabilitation Act.

58. As a consequence of BOR's violations of the Rehabilitation Act, Mr. Piersol has incurred lost wages and benefits.

59. Mr. Piersol is entitled to declaratory relief, lost wages and benefits, front pay or reinstatement, and expenses of litigation, including reasonable attorneys' fees and costs.

## COUNT III
**Retaliatory Termination in Violation of the Rehabilitation Act**

60. At all relevant times, Mr. Piersol was a qualified individual with a disability as that term is defined under 42 U.S.C. § 12102, incorporated by the Rehabilitation Act.

61. Mr. Piersol is a person with a disability inasmuch as he has a physical impairment causing a substantial limitation in one or more major life activities.

62. At all relevant times, Mr. Piersol was qualified to perform the essential functions of the Chief Information Officer position.

63. On information and belief, BOR is an entity that receives federal funding.

64. Mr. Piersol engaged in protected activity under the Rehabilitation Act by requesting a reasonable accommodation for his disability, including requesting to work a modified work schedule so that he could attend tri-weekly dialysis appointments for his disability.

65. BOR violated the Rehabilitation Act by terminating Mr. Piersol's employment in retaliation for his protected activity.

66. BOR acted with deliberate indifference to Mr. Piersol's federally protected rights under the Rehabilitation Act.

67. As a consequence of BOR's violations of the Rehabilitation Act, Mr. Piersol has incurred lost wages and benefits.

68. Mr. Piersol is entitled to declaratory relief, lost wages and benefits, front pay or reinstatement, and expenses of litigation, including reasonable attorneys' fees and costs.

## COUNT IV
**Discriminatory Termination in Violation of the ADA**

69. At all relevant times, Mr. Piersol was an employee with a disability within the meaning of the ADA.

70. At all relevant times, Mr. Piersol was qualified to perform the essential functions of the Chief Information Officer position.

71. At all times material to the claims herein, BOR was a public entity, defined in the ADA, 42 U.S.C. § 12131(1), as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States local government."

72. Title II of the ADA, 42 U.S.C. § 12132, provides that no "public entity" shall discriminate against a "qualified individual with a disability" with respect to the entity's "services, programs, or activities."

73. Employment is one of the "services, programs, or activities" that BOR provides as a public entity.

74. BOR violated the ADA by discriminating against Mr. Piersol on the basis of disability, including terminating his employment because of his disability and/or because he requested a reasonable accommodation for his disability.

75. BOR acted with deliberate indifference to Mr. Piersol's federally protected rights under the ADA.

76. As a consequence of BOR's violation of the ADA, Mr. Piersol has incurred lost wages and benefits.

77. Mr. Piersol is entitled to declaratory relief, lost wages and benefits, front pay or reinstatement and expenses of litigation, including reasonable attorneys' fees and costs.

### COUNT V
### Failure to Accommodate in Violation of the ADA

78. At all relevant times, Mr. Piersol was an employee with a disability within the meaning of the ADA.

79. At all relevant times, Mr. Piersol was qualified to perform the essential functions of Chief Information Officer.

80. At all times material to the claims herein, BOR was a public entity, defined in the ADA, 42 U.S.C. § 12131(1), as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States local government."

81. Title II of the ADA, 42 U.S.C. § 12132, provides that no "public entity" shall discriminate against a "qualified individual with a disability" with respect to the entity's "services, programs, or activities."

82. Employment is one of the "services, programs, or activities" that BOR provides as a public entity.

83. On or about October 21, 2022, Mr. Piersol requested to work a modified schedule of 7 am – 4 pm in order to attend tri-weekly dialysis appointments for his disability. In the alternative, he requested intermittent FMLA leave, including to attend upcoming medical appointments on or about November 16 – 18, 2022, December 2, 2022, and additional days as needed to assess his need for a kidney transplant.

84. On or about November 14, 2022, one day after BOR granted Mr. Piersol's intermittent FMLA request, Ms. MacCartney presented him with two options: (1) BOR would be terminating his employment effective immediately or (2) he could resign in lieu of termination, remaining employed with BOR until December 31, 2022, working on technology-related projects in BOR's Strategic Implementation Unit.

85. On or about November 15, 2022, needing income and health insurance, Mr. Piersol chose resignation in lieu of termination.

86. BOR violated the ADA by failing to provide Mr. Piersol with a reasonable accommodation for his disabilities.

87. BOR acted with deliberate indifference to Mr. Piersol's federally protected rights under the ADA.

88. Mr. Piersol is entitled to declaratory relief, lost wages and benefits, and expenses of litigation, including reasonable attorneys' fees and costs.

## COUNT VI
## Retaliatory Termination in Violation of the ADA

89. At all relevant times, Mr. Piersol was an employee with a disability within the meaning of the ADA.

90. At all relevant times, Mr. Piersol was qualified to perform the essential functions of the Chief Information Officer position,

91. At all times material to the claims herein, BOR was a public entity, defined in the ADA, 42 U.S.C. § 12131(1), as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States local government."

92. Title II of the ADA, 42 U.S.C. § 12132, provides that no "public entity" shall discriminate against a "qualified individual with a disability" with respect to the entity's "services, programs, or activities."

93. Employment is one of the "services, programs, or activities" that BOR provides as a public entity.

94. Mr. Piersol engaged in protected activity under the ADA by requesting a reasonable accommodation for his disability, and specifically that he be permitted to modify his schedule so that he may attend dialysis appointment.

95. BOR violated the ADA by terminating Mr. Piersol's employment in retaliation for his protected activity.

96. BOR acted with deliberate indifference to Mr. Piersol's federally protected rights under the ADA.

97. Mr. Piersol is entitled to declaratory relief, lost wages and benefits, and expenses of litigation, including reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Piersol requests that this case be tried before a jury and that Mr. Piersol be awarded the following relief:

a) A declaratory judgment that BOR's practices complained of herein violated the Rehabilitation Act;

b) A declaratory judgment that BOR's practices complained of herein violated the ADA;

c) Lost wages and benefits resulting from BOR's Rehabilitation Act violations;

d) Lost wages and benefits resulting from BOR's ADA violations;

e) An award of prejudgment and post-judgment interest;

f) Reinstatement and/or front pay and benefits;

g) An award of costs and expenses of this action, including reasonable attorneys' and expert fees; and

h) Such other and further relief as this Court deems just and proper.

Respectfully submitted this 5th day of October 2023.

>*/s/ Justin M. Scott*
>Justin M. Scott
>Georgia Bar No. 557463
>Tierra M. Monteiro

                                Georgia Bar No. 743224
                                SCOTT EMPLOYMENT LAW. P.C.
                                160 Clairemont Avenue, Suite 610
                                Decatur, Georgia 30030
                                Telephone: 678.780.4880
                                Facsimile: 478.575.2590
                                jscott@scottemploymentlaw.com
                                tmonteiro@scottemploymentlaw.com

                                Counsel for Plaintiff